WC:DCW
F. #2009R01289

M-09-872

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA

    -against-

WALTER BREWSTER and
THOMAS BENSON,

              Defendants.
------------------------------X

**FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF
APPLICATION FOR ARREST
WARRANT

(Title 18, U.S.C.,
Section 1349)

EASTERN DISTRICT OF NEW YORK, SS:

        Jared W. Witmier, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

        Upon information and belief, in or about and between November 2006 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants WALTER BREWSTER and THOMAS BENSON, together with others, did knowingly and unlawfully engage in a conspiracy to execute a scheme and artifice to defraud and to obtain money and property, to wit: large sums of cash, by means of false and fraudulent pretenses, representations and promises, and to carry out said scheme and artifice, did cause to be transmitted writings, signs, signals and sounds by means of wire in interstate commerce, in violation of Title 18, United States Code, Section 1343.

        (Title 18, United States Code, Sections 1349)

1

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the FBI, and I am assigned to the Healthcare Fraud Investigation Squad. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with other law enforcement agents and witnesses, my examination of reports and records, and my personal participation in the investigation of this matter. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2. In or about April 2009, the FBI was contacted by the New York State Insurance Fraud Bureau concerning a possible fraud involving the Robert Plan, an insurance company. Through subsequent interviews with a New York Liquidation Bureau representative, FBI Special Agents learned that the Robert Plan also owns and operates several other insurance companies, including Lion Insurance. Additionally, the Robert Plan is a third-party administrator for other insurance companies, including Urban Insurance Company and Hudson Insurance Company.

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause, I have not set forth all the facts and circumstances of which I am aware.

3. On May 1 and July 16, 2009, FBI Special Agents conducted non-custodial interviews of defendant THOMAS BENSON in connection with his former employment with the Robert Plan. BENSON stated that he was employed by the Robert Plan between 1988 and April 2008, when the company went out of business. From in or about 2005 until April 2008, defendant BENSON served as a Personal Injury Protection ("PIP") manager for the Robert Plan. Defendant BENSON's job duties as PIP manager included oversight of the PIP Department and approval of payments for bills submitted to the Robert Plan, Lion Insurance, Urban Insurance Company and Hudson Insurance Company (collectively referred to herein as "the Robert Plan companies") by various vendors.

4. BENSON stated that in or about 2006, he and his longtime acquaintance, defendant WALTER BREWSTER, devised a scheme to defraud the Robert Plan companies.[2] BREWSTER's role in the scheme was to submit fraudulent bills to the Robert Plan companies on behalf of shell companies that he created and controlled. BENSON's role in the fraudulent scheme was to process these fake bills and ensure that checks were issued from the Robert Plan companies to BREWSTER through his straw companies.

5. Through interviews with defendant BENSON and a review of records from the New York State Office of Corporations,

---

[2] Although BREWSTER did not work for the Robert Plan, he and BENSON had a side business which collected payments from insurance companies on behalf of various medical providers.

banking records, and other documents obtained during the course of the FBI's investigation, FBI Special Agents learned that defendant WALTER BREWSTER created at least three straw companies in the names of Comprehensive General Diagnostics, Apparatus Diagnostics Inc., and Abstract Medical Supplies Corp. Additionally, BREWSTER established mailbox accounts with private mail service companies located in Queens, New York. These included private mailboxes at the following addresses: (1) 11064 Queens Blvd, Suite 420, Forest Hills, New York 11375-6347; and (2) 72-11 Austin Street, Suite 291, Forest Hills, New York 11375. In furtherance of the fraud scheme, BREWSTER also used bank accounts at a bank in Fort Lee, New Jersey. These bank accounts were in various names including AJR Service Group, Inc., Apparatus Diagnostic, Inc., and Abstract Medical Supply Corp. Defendant BREWSTER was the sole signatory on these bank accounts.

6. According to defendant BENSON, beginning in or about November 2006 through in or about April 2008, defendant BREWSTER began to create and submit false invoices to the Robert Plan companies on behalf of the shell companies he created and controlled. Defendant BENSON, knowing that the invoices submitted by defendant BREWSTER were fake, would fraudulently process the fake invoices, write up authorization sheets, approve payment, and issue checks to the straw companies.

7.  According to defendant BENSON, he always hand delivered to defendant WALTER BREWSTER the fraudulently issued checks from the Robert Plan companies at designated meeting places in Queens, New York, or Bethpage, Nassau County, New York.

8.  A review of bank records reveals that almost all of the checks fraudulently issued to defendant BREWSTER's straw companies by the Robert Plan companies were taken to either a bank branch, or an Automated Teller Machine ("ATM") in the State of New Jersey, and deposited into bank accounts in New Jersey that were controlled by defendant BREWSTER.  BREWSTER opened each of these bank accounts in New Jersey, and was the sole signatory on the bank accounts.  This meant that he alone was authorized to conduct transactions in the bank accounts.  According to BENSON, he and BREWSTER split the proceeds of the fraud.

9.  FBI Special Agents have confirmed with representatives of Bank of America that the transfer of funds from the New York bank accounts of the Robert Plan companies to the New Jersey bank accounts controlled by defendant BREWSTER were effected by means of interstate electronic wire communications between Bank of America facilities in New Jersey and Connecticut, and Federal Reserve Districts in Massachusetts and New York.

10. A review of bank records reveals that between November 2006 and in or about June 2008, the following checks were issued from the Robert Plan companies to the straw companies

created and controlled by defendant WALTER BREWSTER: (1) 42 checks, in the aggregate amount of $93,527.76, issued from the Robert Plan companies to Apparatus Diagnostics Inc.; (2) 48 checks, in the aggregate amount of $49,558.43, issued from the Robert Plan companies to Abstract Medical Supplies Corp.; and (3) 5 checks, in the aggregate amount of $16,545.33, issued from the Robert Plan companies to Comprehensive General Diagnostic.

        11.    For example, the following checks were drawn from the New York bank accounts of the Robert Plan of NY Corp. at Bank of America, and were made payable to Apparatus Diagnostic, one of defendant Brewster's straw companies:

    a.    Check #9070006191, dated November 16, 2007, in the amount of $3,575.31;

    b.    Check #5150000089, dated December 18, 2007, in the amount of $2,914.14;

    c.    Check #5150000100, dated December 18, 2007, in the amount of $1,790.66;

    d.    Check #5150000102, dated December 18, 2007, in the amount of $1,790.66;

    e.    Check #5150000406, dated May 28, 2008, in the amount of $2,732.18;

    f.    Check #5150000411, dated May 28, 2008, in the amount of $2,301.53.

The memorandum lines on the front of all of these checks indicate that they were issued in payment to a vendor. It is also indicated on the front of each check that it should be mailed to "Apparatus Diagnostic" at "72-11 Austin Street - Suite 291" in Forest Hills,

New York, 11375. This is the address for one of the private mailboxes that defendant BREWSTER established and controlled in Queens, New York. Defendant BREWSTER deposited all of these checks into a New Jersey bank account in the name of Apparatus Diagnostic Inc., in or about and between November 2007 and May 2008. BREWSTER had sole signatory authority over the bank account for Apparatus Diagnostic Inc. Following the deposits, funds were transferred from the account of the Robert Plan of NY Corp. to the straw account in the name of Apparatus Diagnostic Inc. by means of interstate electronic communications.

      12. As a further example of the fraudulent scheme, the following checks were drawn from the operating account of Lion Insurance at Fleet Bank (which is owned by Bank of America), and were made payable to Apparatus Diagnostic, Brewster's straw company:

    a. Check #5219900571, dated May 29, 2007, in the amount of $5,469.50;

    b. Check #5219900572, dated May 29, 2007, in the amount of $7,253;

    c. Check #5219900610, dated July 19, 2007, in the amount of $1,360;

    d. Check #5219900604, dated July 5, 2007, in the amount of $1,260;

    e. Check #5219900610, dated July 19, 2007, in the amount of $1,360;

Again, the memorandum lines on the front of all of these checks indicate that they were issued in payment to a vendor. It is also

indicated on the front of each check that it should be mailed to "Apparatus Diagnostic" at "72-11 Austin Street - Suite 291" in Forest Hills, New York, 11375, a private mailbox controlled by BREWSTER. Defendant BREWSTER deposited all of these checks into a New Jersey bank account in the name of either Apparatus Diagnostic Inc., or AJR Service Group Inc. in or about and between May 2007 and July 2007.  BREWSTER had sole signatory authority over both of

these bank accounts. Following the deposits, funds were transferred from the operating account of Lion Insurance to the straw bank accounts in the name of Apparatus Diagnostic Inc. and AJR Service Group Inc. by means of interstate electronic communications.

Wherefore, it is respectfully requested that a warrant be issued for the defendants WALTER BREWSTER and THOMAS BENSON so that they may be dealt with according to law.

                                                                  _____
                                                                  JARED W. WITMIER
                                                                  SPECIAL AGENT
                                                                 Federal Bureau of Investigation

Sworn to before me this
28th day of August 2009

                                       _____
                                       JUDGE
                                       YORK